IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRECKENRIDGE PHARMACEUTICAL, INC., | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 07-CV-11114(RWS) |
| MIDLAND HEALTHCARE, LLC, | ) |
| Defendant. | ) JURY TRIAL DEMANDED |

**MEMORANDUM OF LAW IN SUPPORT OF
THE MOTION OF BRECKENRIDGE PHARMACEUTICAL, INC.
<u>FOR SUMMARY JUDGMENT</u>**

| | |
|---|---|
| C. Randolph Ross, Esquire (CR 8966) | Kristi A. Davidson, Esquire (KD 4753) |
| Timothy J. Fierst, Esquire (TF 3247) | BUCHANAN INGERSOLL & ROONEY PC |
| CROWELL & MORING, LLP | One Chase Manhattan Plaza, 35th Floor |
| 153 East 53rd Street, 31st Floor | New York, NY 10005-1417 |
| New York, New York 10022 | Telephone: (212) 440-4400 |
| Telephone: (212) 895-4000 | Fax: (212) 440-4401 |
| Fax: (212) 223-4134 | |

Attorneys for Plaintiff Breckenridge Pharmaceutical, Inc.

**PRELIMINARY STATEMENT**

Plaintiff Breckenridge Pharmaceutical, Inc. ("Breckenridge") paid $200,000 to Defendant Midland Healthcare, LLC ("Midland") for services explicitly defined in the contract between them. However, Midland did not perform any of the services for which Breckenridge contracted. The agreement has now been terminated, and Midland should be ordered to return to Breckenridge the moneys that it was paid. There are no genuine issues of material fact, so Breckenridge is entitled to judgment as a matter of law.

**STATEMENT OF FACTS**

The relevant facts are as set forth in Breckenridge's Local Rule 56.1 Statement. On January 26, 2007, Breckenridge and Midland entered into an ANDA Development, Manufacture, and Supply Agreement (the "Agreement"). (Exhibit 1.)[1] The Agreement provides that Breckenridge was to pay Midland a certain total sum for the development of a prescription product (the "Product") to the point at which Breckenridge could submit an Abbreviated New Drug Application ("ANDA") for approval by the United States Food and Drug Administration ("FDA") so that the Product could be marketed in the United States, with certain amounts due to Midland upon FDA approval. (*See* Agreement (Exh. 1), at section 2.1 and Exhibit B thereto.)

Exhibit B to the Agreement breaks these services down into certain "milestones," and provides that certain specified payments were to be made by Breckenridge to Midland upon the achievement of these "milestones." (*Id.*, Exhibit B thereto.) The second milestone in the Agreement is the "completion of formulation development," which was to be achieved 120 days after the execution of the Agreement. *Id*. The Agreement defines "completion of formulation development" to include "comparative assay results for the pilot-scale batch, and successful

---

[1] All exhibits referenced are exhibits to the Declaration of Larry J. Lapila, filed herewith. Because of the confidential nature of the Agreement, only the pertinent pages are attached. If necessary, a full copy will be filed under seal at an appropriate time, upon approval of the requisite motion.

completion of analytical method validation, including impurities." (*Id.*, section 1.7.) In addition, one of the standard steps required for formulation development of a pharmaceutical product is stability testing on product that has been produced pursuant to the formulation. (Lapila Decl., ¶ 11.) By 280 days from commencement, Breckenridge was to receive the results from a completed three-month stability test. Agreement, Exhibit B. Accordingly, stability testing was to have begun by approximately early August, 2007.

Breckenridge paid to Midland a total of $200,000 based on Midland's representations that stability testing had been performed on a development batch of the Product and that appropriate progress was being made on the subsequent milestones. (Lapila Decl., ¶¶ 8-9.) However, in keeping with industry practice, in September, 2007, Mr. Larry Lapila, Vice President of Business Development for Breckenridge, along with a regulatory consultant, Mr. Robert Falconer, conducted an on-site audit of Midland's facility. Lapila Decl., ¶ 12; Falconer Decl., ¶ 2.) During this on-site audit they discovered that, contrary to its earlier representations of progress, Midland had not produced a pilot-scale batch, had not produced comparative assay results, had not completed analytical method validation, and had not performed (or even begun to perform) stability testing of the formulation. (Lapila Decl., ¶ 13; Falconer Decl. ¶ 4.) To this date, Midland has still not rendered any of the services required by section 2.1 of the Agreement, and none of the milestones specified in Exhibit B to the Agreement except for "Execution of Agreement." (Lapila Decl., ¶ 14.)

Following this on-site audit, on September 26, 2007, Mr. Lapila emailed Mr. Raman ("Ray") Kapur of Midland that Breckenridge had learned from its site visit that stability testing had not been performed on a development batch as Midland had previously represented, and that the Product development was off schedule. (Lapila Decl., ¶ 15; Exhibit 2 (09/26/2007 email to

2

Midland).) Because Mr. Lapila had promoted this project with Midland to his colleagues in Breckenridge, he subsequently emailed to Mr. Kapur, on November 12, 2007: "You have put me in a VERY embarrassing position. . . . This project has died due to Midland's failure to get it up on stability in a timely manner. Since our visit I have found it impossible to get information from you." (Lapila Decl., ¶ 16; Exhibit 3 (11/12/2007 to 11/19/2007 emails between Midland and Breckenridge).) Mr. Lapila also asked for the return of the money paid by Breckenridge to Midland. (Lapila Decl., ¶ 17; Exh. 3.)

Mr. Kapur's reply emails to Mr. Lapila do not contradict Mr. Lapila's assertions that the project had "died due to Midland's failure to get it up on stability in a timely manner," nor did Mr. Kapur disagree with Mr. Lapila's other assertions, but instead effectively admits them. (*See* Exhibit 3.) Rather than disagree with Mr, Lapila, Mr. Kapur apologized twice for putting Mr. Lapila in this position, requested time to complete a "restructuring transaction," and stated that he would come back to Breckenridge "with a proposal," and was "looking into a couple of other things . . . to see what else we can do together." *Id.*.

Also by this time, Midland had failed to provide to Breckenridge at least two consecutive monthly reports that were required by the section 2.3 of the Agreement, and failed to provide other reports requested by Breckenridge as well. (*See* Agreement (Exh. 1), at section 2.3; Lapila Decl., ¶ 20.) In light of Midland's failures to achieve the milestones and to provide the requisite reports, on November 30, 2007, Breckenridge sent to Midland a letter terminating the Agreement pursuant to section 7.2 of the Agreement. (*See* Exhibit 4.) Thus, by its terms, the Agreement was terminated as of January 29, 2008. (Agreement, section 7.2)

Midland has not rendered any of the services to be provided to Breckenridge pursuant to the Agreement and specified in section 2.1 of the Agreement or Exhibit B thereto, and thus there

are no "actual services rendered" for which Midland would have a right to be paid pursuant to the final paragraph section 7.2(b) of the Agreement. (Lapila Decl., ¶¶ 14, 23.)

**ARGUMENT**

I.   **The Standard For Granting Summary Judgment.**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 247 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. *Id.* at 255; *see also, e.g., Brentwood Pain & Rehabilitation Services, P.C. v. Allstate Ins. Co.*, 508 F. Supp. 2d 278, 288 (S.D.N.Y. 2007) *Marlow v. Office of Court Admin. of State of N.Y.*, 820 F. Supp. 753, 755-56 (S.D.N.Y. 1993) (Sweet, J.).

"However, with respect to a properly supported summary judgment motion, the party opposing summary judgment 'may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" *Parks Real Estate Purchasing Group v. St. Paul Fire and Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006) (quoting F.R.C.P. 56(e)). *See also Anderson*, 477 U.S. at 248. The "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient" to withstand a motion for summary judgment. *Anderson*, 477 U.S. at 252. Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without

4

supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.,* 77 F.3d 603, 615 (2d Cir. 1996) (quotations omitted). The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Marlow, supra* (quoting *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corporation,* 475 U.S. 574, 586 (1986)).

**II.     Breckenridge Has Demonstrated That Midland Did Not Perform Any Of The Services Specified In The Agreement For Which Midland Was Paid $200,000, So The Amount Received By Midland Must Be Repaid To Breckenridge.**

As explained above and demonstrated in the Agreement, Breckenridge's Rule 56.1 Statement, and the accompanying declarations, Midland contracted to render specifically defined services to Breckenridge related to the development of the Product. Midland did not render <u>any</u> of these services, in spite of being paid $200,000. If the Agreement were still in effect, Midland might be entitled to retain the $25,000 for execution of the Agreement. (*See* Exhibit B to the Agreement.) However, pursuant to Breckenridge's November 30, 2007, termination letter, the Agreement was terminated as of Tuesday, January 29, 2008. Midland is therefore now liable to Breckenridge for the full $200,000 it has received from Breckenridge, because Midland has performed none of the services which it contracted to provide in the Agreement.

## **CONCLUSION**

Based on the foregoing, Breckenridge respectfully requests that the Court grant it summary judgment on its claim against Midland.

Dated:  New York, New York
        January 30, 2008

                         /s/ C. Randolph Ross
C. Randolph Ross, Esquire (CR 8966)
Timothy J. Fierst, Esquire (TF 3247)
CROWELL & MORING, LLP
153 East 53rd Street, 31st Floor
New York, New York 10022
Telephone: (212) 895-4200
Fax: (212) 223-4134

Kristi A. Davidson, Esquire (KD 4753)
BUCHANAN INGERSOLL & ROONEY PC
One Chase Manhattan Plaza, 35th Floor
New York, NY 10005-1417
Telephone: (212) 440-4400
Fax: (212) 440-4401

*Attorneys for Plaintiff*