UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

BRECKENRIDGE PHARMACEUTICAL,
INC,                                                       Civil Action No.: 07-CV-11114(RWS)

                        Plaintiff,

            vs.

MIDLAND HEALTHCARE, LLC.

                        Defendant.

### DECLARATION OF RAMAN KAPUR IN OPPOSITION TO THE MOTION OF BRECKENRIDGE PHARMACEUTICAL, INC. FOR SUMMARY JUDGMENT

RAMAN KAPUR declares, under the penalty of perjury, that the following is true and correct:

1.    I am the Chairman of Midland Healthcare LLC and make this declaration on behalf of the defendant and in opposition to the motion for summary judgment filed by the plaintiff, Breckenridge Pharmaceutical, Inc.

2.    Midland and Breckenridge entered into a ANDA Development, Manufacture, and Supply Agreement on January 26, 2007 for the development of a subscription product.

3.    At the time we entered into the aforesaid Agreement the Plaintiff was aware that Midland had developed pilot formulation for the subject product as reflected by the Milestone's contained in the Agreement and that the initial development work had been conducted in India and was to be supplemented by work in the United States.

4.    The Plaintiff had also been informed that a Milestone stability study had been conducted in India on the developed formulation and that there would be a

Page -1-

repeat study with the batch of the product that would be used for the submission for the Abbreviated New Drug Application (ANDA) for the United States FDA.

5.    The work that had been performed in accordance with the Agreement, and in compliance with the initial Milestones, as indicated in Exhibit B, paragraph 4 thereof, of the Agreement which is attached to the Memorandum of Law in opposition to the motion for summary judgment and referred to in the Rule 56.1 (b) Declaration of Counter-Statement of Facts .

6.    Midland has kept Breckenridge informed of the progress of the development of the product as required.

7.    At no time did I admit, either directly, or by implication, in the exchange of emails with Mr. Lapina or any other principal of Breckinridge,  that Midland was in default of their obligations in the development of the subject product under the terms of the Agreement.

8.    I would welcome the opportunity to engage in formal discovery concerning the claims made by the plaintiff.  The facts would show that Breckenridge, upon learning of the FDA had changed the subject product of the Agreement from an Rx product to a OTC (over-the-counter) product, sought any opportunity to exit the project and end the relationship with Midland.

9.    Breckenridge's assertion that Midland defaulted in meeting various Milestones outlined in Exhibit B to the Agreement are without merit and contrary to the facts. Breckenridge's claims that the Milestones were not met is contravened by the fact that they paid for the very Milestones that are alleged not to have been met. We were paid twenty-five thousand ($25,000) dollars for having met Milestone 1. We were paid seventy-five thousand ($75,000) for having met Milestone 2.  We were paid fifty-thousand ($50,000) dollars for having met Milestone 3, and we were paid twenty-five thousand ($25,000) dollars toward Milestone 4.  We were

unable to complete Milestone 4 before Breckenridge unilaterally terminated the Agreement.

10. In substance, Midland did complete formulation development in accordance with Milestone 2 because it was understood by Breckenridge that the stability study had been conducted in the pilot formulation that was developed in India. Further, it was understood that the only other stability study to be performed, the accelerated stability study for the ANDA, would be conducted on the exhibit batch and that these results would be submitted to the FDA as specified in Milestone IV. At the time Breckenridge unilaterally terminated the Agreement we had been partially paid for the work done between Milestones between III and IV.

11. Midland has expended substantial money in furtherance of the aforesaid Agreement. Attached hereto is a partial breakdown of Midland's development costs for the subject product. These costs are not complete and are subject to a complete audit. (Exhibit "D" attached to the Memorandum of Law).

12. The Agreement required that Breckenridge provide a sixty day "cure" period in order to allow Midland the opportunity to remedy any alleged breach. (See Exhibit A, "Termination, section 7.2 (b), attached hereto).

Breckenridge never provided the required 60 day notice and never allowed Midland the opportunity to cure any alleged breach under the Agreement.

13. The Agreement further requires that, under 7.2 (b), that if Breckenridge exercises its option to terminate the Agreement then Midland would be able to prepare a *"reconciliatory billing for actual services rendered. This billing will represent actual time and costs reasonably incurred...and be deducted from (or added to, as the case may be) the payments made to date pursuant to Exhibit B, and the balance owed by (or due to) either party will be paid in full within thirty days after the receipt of the Midland reconciliatory billing invoice."* (Agreement ¶ 7.2 (b))

Page -3-

14.  Breckenridge is not entitled to summary judgment due to the numerous, and substantial, genuine issues of fact concerning this matter. These issues relate to the work done pursuant to the Milestones outlined in the Agreement. Even if Midland had breached the Agreement, which we adamantly deny, Breckenridge failed to provide the required notice to cure and even had they complied with the cure provision, Midland would be entitled to a trial on the issue of damages according to the specific language of the Agreement as it refers to reimbursement to Midland for costs expended in the project.

15.  For all of the foregoing reasons it is respectfully submitted that the Plaintiff's motion be denied.

I declare under the penalty of perjury , that the foregoing is true and correct. Executed at Kansas City, Missouri on February 24, 2008.

/s/Raman Kapur

RAMAN KAPUR

Dated: February 26, 2008
Signed in Princeton, New Jersey